## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| J. DOE(s) as Taxpayer(s) and provider(s) of Student Services | ) ) ) | No. 17-50307 |
| Plaintiff, | ) ) | **COMPLAINT** |
| v. | ) ) ) | |
| COMMUNITY UNIT SCHOOL DISTRICT No. 428 and in Their Official Capacities as Elected Members of THE DEKALB SCHOOL BOARD: VICTORIA NEWPORT, JEFF HALLGREN, VALERIE PENA-HERNANDEZ, FRED DAVIS, KERRY MELLOTT, RICK SMITH, and HOWARD SOLOMON; and UNNAMED HANDLERS, MAILERS, DRIVERS, INSIDERS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, JUDICIAL OVERSIGHT, AND ACCOUNTABILITY ORDER

NOW COME Plaintiff(s), J. DOE(s) ("Doe") as Taxpayer(s) ("Taxpayer") and individual(s) providing services for students ("student service provider"), by and through attorney, Michael P. Coghlan of the Law Office of Michael P. Coghlan, LLC, and for this Complaint against Defendants, COMMUNITY UNIT SCHOOL DISTRICT No. 428 ("CUSD 428") and Elected Members of THE DEKALB SCHOOL BOARD and UNNAMED HANDLERS, MAILERS, DRIVERS, and INSIDERS, hereby states as follows:

### JURISDICTION AND VENUE

1.      DOE has standing and capacity to sue in that DOE is and has been a property tax payer in CUSD 428 for the past 5 years and DOE has also provided student services to CUSD 428 students. See DOE Affidavit and Verified Complaint.

2.     Pursuant to Federal Rule of Civil Procedure 8(a)(1), grounds for jurisdiction include factual allegations of school personnel and private individuals involved in the enrollment of non-resident students under CUSD 428 enrollment policy 7:60 and Illinois School Code enrollment requirements under 105 ILCS 5/10-20.12b.

3.     Plaintiff(s) bring this action under Title I of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 6301 *et seq.*) ("Title 1"), Every Student Succeeds Act (129 Stat. 1802) ("ESSA"), the Americans With Disabilities Act (42 U.S.C. §12101, *et seq.*) ("ADA"), and the Fourteenth Amendment (U.S. Const. Amendment 14).

4.     The allegations of misspending Title 1 funds states a basis for jurisdiction as a Federal Question. The Complaint need not state the amount in question if the jurisdiction is based on a federal question, but this Complaint alleges more than ONE MILLION DOLLARS ($1,000,000) in question annually for federal question jurisdiction.

5.     This Court has jurisdiction under 28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution and laws or treaties of the United States.

6.     This Court has jurisdiction under 28 U.S.C. §1343, which gives district courts jurisdiction over actions to secure civil rights which are extended by the United States government.

7.     The Plaintiff(s) seek to secure rights to due process and prevent government action from depriving Plaintiff(s) of property and school services as set forth in this Complaint.

8.     This Court has jurisdiction under 28 U.S.C. §1367, which gives the district court supplemental jurisdiction over state law claims. The state claims controversy is estimated to exceed SEVEN MILLION DOLLARS ($7,000,000) annually.

9.     Claims that are so related to claims under original jurisdiction form part of the same case or controversy under Article III of the United States Constitution.

10.    This Court has jurisdiction under the 14th Amendment due to government deprivations of rights and property without due process (U.S. Const. Amendment 14).

11.    Taxpayers and lawfully-enrolled students were deprived of a fair hearing and notice prior to deprivations of private funds and school services. These deprivations were caused by Defendants' failure to comply with school residency law.

12.    This Fourteenth Amendment challenge to the DeKalb School CUSD 428 Title 1 expenditures and excessive property tax levies are alleged to cause DeKalb property tax payers to pay $7,500,000 for 1,000 students who are not being schooled in the district of their lawful residence. Non-resident enrollment violations also cause lawfully-enrolled CUSD 428 students to be deprived of school services.

13.    This Court has jurisdiction under the Equal Protection Clause of the U.S. Constitution. DeKalb taxpayers and students lawfully-enrolled in CUSD 428 were deprived of equal protection when DeKalb property taxes and school resources unjustly enriched non-DeKalb jurisdictions by paying for school services of non-DeKalb students.

14.    The Equal Protection Clause applies to state and local governments stating: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws*. Section 1, Fourteenth Amendment.

15.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District, and because Plaintiff(s) reside(s) in this District as defined by 28 U.S.C. § 1391(d).

16.     The implementation of CUSD 428 residency Policy 7:60 is resulting in Constitutional violations.

17.     Property taxes for CUSD 428 property are subject to constraints under three provisions of the United States Constitution; limits on federal direct taxation, equal protection, and the privileges and immunities provisions.

18.     The CUSD 428 levy must grant DeKalb property tax payers and lawfully-enrolled students' equal protection. Article I, Section 8, Clause 1 United States Constitution.

19.     The Apportionment Clause requires that taxes are: "… in proportion to the Census…" (Clause 4).  The Apportionment Clause is violated by CUSD 428 levy requiring persons who own property in CUSD 428 to pay $7,500 per student enrolled in violation of the non-resident student laws 105 ILCS 5/12. b(e) and (f).

20.     The Privileges and Immunities Clause of the U.S. Constitution, Article IV, Section 2, Clause 1 prevents a local government jurisdiction from treating citizens of another local government jurisdiction in a discriminatory manner.

21.     In this case non-DeKalb jurisdictions are paying a less-than-lawfully-required amount of property taxes and thereby causing owners of property in CUSD 428 to pay an unlawfully excessive amount of property taxes to school services provided to non-resident students enrolled in violation of 105 ILCS 5/12. b(e) and (f).

## PARTIES

**Plaintiff(s):**

22.     Plaintiff(s), DOE(s), is/are citizens of the United States who own property, pay property taxes, and have provided services to CUSD 428 students in the County of DeKalb, State of Illinois, which is in the Northern District of Illinois.

23.     Plaintiff(s)' property tax payments have been used to pay for tuition and school services for students enrolled in CUSD 428 schools.

24.     Plaintiff(s) provided services to CUSD 428 students and continue to offer services to CUSD 428 students.

25.     Any prejudice to Defendants arising from the anonymity of the Plaintiff(s) is outweighed by the public good of this suit challenging government and private actions under CUSD 428 policy 7:60.

26.     There is no public benefit at this time to disclosure of the identity of the Petitioner(s) who is/are asking for Federal Court intervention on behalf of interests which are common to all property tax payers and all lawfully-enrolled students in CUSD 428. See Doe v. Blue Cross, 112 F.3d 869 (7th Cir. 1997) allowing anonymity of Petitioners under these circumstances.

**Defendants:**

27.     Defendants, Community Unit School District No. 428, and the DeKalb School Board are government entities and officials located within DeKalb County, State of Illinois, which is in this judicial district.

28.     The Plaintiff(s) is/are learning the identity and role of the Defendants HANDLERS, MAILERS, DRIVERS, and INSIDERS who are involved with non-resident student enrollment violations.

29.     The interrelationships of the individuals involved in the non-resident student enrollment violations will be identified by discovery depositions, which will be available after this suit is filed.

30.     Discovery will help identify the Defendants engaged in any unlawful enrollment process.

31.     Roland v. McMonagle, No. 12 Civ. 6331, 2014 WL 2861433 at 1 (S.D.N.Y. June 24, 2014) allows Plaintiff(s) herein to add names of defendants after the suit is filed.

32.     Defendant CUSD 428 is the public-school district for the City of DeKalb area in DeKalb County, Illinois. Its office is located at 901 S. 4th Street in DeKalb, IL 60115. Defendant CUSD 428 is a public entity receiving federal funds for purposes of Title 1, ESSA, and ADA.

33.     Defendants, Members of The DeKalb School Board: Ms. Victoria Newport, Mr. Jeff Hallgren, Ms. Valerie Pena-Hernandez, Mr. Fred Davis, Mr. Kerry Mellott, Mr. Rick Smith, and Dr. Howard Solomon (collectively as "School Board") are citizens of the United States, who reside in the County of DeKalb, State of Illinois, which is in the Northern District of Illinois.

34.     Defendants, School Board is a group of elected officials with offices located at 901 S. 4th Street in DeKalb, IL 60115, acting within their official capacities for purposes of Title 1, ESSA, ADA, and 42 U.S.C. § 1983.

35.     Defendants, Handlers, Insiders, Mailers, and Drivers, are a group of varying positions/roles acting with CUSD 428 employees and officials to facilitate the unlawful enrollment of non-resident students.

36.     The claims against the Handlers, Mailers, Drivers, and Facilitators arise out of the same conduct and same false residency claims set forth in this pleading.

## FACTUAL ALLEGATIONS

37.     The attached Doe Affidavit and Verified factual assertions herein provide a factual basis for the causes of action, findings, and relief requested herein.

38.     Numerous CUSD 428 employees and officials working with Handlers, Drivers, Insiders, and Mailers facilitated the enrollment of an estimated 1,000 non-resident students in violation of Illinois School Code 105 ILCS 5/12.b (e) and (f).

39.     Based on the unlawful enrollments CUSD 428 adopted excessive tax levies and received excessive property tax payments which were collected without lawful authority. The DeKalb County Clerk applied tax formulas. The tax calculations resulted in the issuance of property tax bills which were sent to owners of property ("property tax extension.") in the CUSD 428 taxing district. The CUSD 428 levy was applied to the Equalized Assessed Valuation ("EAV") for each parcel of land subject to the CUSD 428 tax levy.

40.     Illinois and Federal law limits the total amount of money the school District can lawfully collect.

41.     By allowing the enrollment of non-resident students in violation of 12b (e) and (f), CUSD 428 collected funds in excess of its lawful authority.

42.     The CUSD 428 School Board approved the school tax levies which included an estimated SEVENTY-FIVE MILLION DOLLARS ($7,500,000) in unlawful expenses for unlawfully-enrolled non-resident students.

43.     The excessive levy and excessive taxation occurred as part of the "property tax cycle".

44.     Compounding the unlawful portion of the levy, there is a process referred to as "ballooning" or "inflating the levy" which is followed by some school districts. "Inflating the levy" occurs when a school district claims that the EAV is expected to increase the year following the

levy. "Ballooning the levy" occurs when a school board adopts a final tax levy prior to learning the final amount of the EAV for the same year. Any ballooning by CUSD 428 was therefore based on an already excessive levy due to non-resident student enrollment violations.

45.    Illinois school residency requirements under 105 ILCS 5/10-20.12b provide criminal penalties for unlawful enrollment:

> "(e) Except for a pupil referred to in subsection (b) of Section 10-22.5a, a pupil referred to in Section 10-20.12a, or a pupil referred to in subsection (b) of this Section, a person who knowingly enrolls or attempts to enroll in the schools of a school district on a tuition free basis a pupil known by that person to be a nonresident of the district shall be guilty of a Class C misdemeanor.
>
> (f) A person who knowingly or wilfully presents to any school district any false information regarding the residency of a pupil for the purpose of enabling that pupil to attend any school in that district without the payment of a nonresident tuition charge shall be guilty of a Class C misdemeanor."

DeKalb School student residency and enrollment policy 7:60 provides:

> Resident Students. "… A student's residence is the same as the person who has legal custody of the student. A person asserting legal custody over a student, who is not the child's natural or adoptive parent, shall complete a signed statement, stating: (a) that he or she has assumed and exercises legal responsibility for the child, (b) the reason the child lives with him or her, other than to receive an education in the District, and (c) that he or she exercises full control over the child regarding daily educational and medical decisions in case of emergency. If the District knows the current address of the child's natural or adoptive parent, the District shall request in writing that the person complete a signed statement or Power of Attorney stating: (a) the role and responsibility of the person with whom their child is living, and (b) that the person with whom the child is living has full control over the child regarding daily educational and medical decisions in case of emergency.
>
> A student whose family moves out of the District during the school year will be permitted to attend school for the remainder of the year without payment of tuition.

When a student's change of residence is due to the military service obligation of the student's legal custodian, the student's residence is deemed to be unchanged for the duration of the custodian's military service obligation if the student's custodian made a written request. The District, however, is not responsible for the student's transportation to or from school.

If, at the time of enrollment, a dependent child of military personnel is housed in temporary housing located outside the District, but will be living within the District within 60 days after the time of initial enrollment, the child is allowed to enroll, subject to the requirements of State law, and must not be charged tuition.

Admission of Nonresident Students Pursuant to an Agreement or Order

Non-resident students may attend District schools tuition-free pursuant to:

1. A written agreement with an adjacent school district to provide for tuition-free attendance by a student of that district, provided both the Superintendent or designee and the adjacent district determine that the student's health and safety will be served by such attendance.
2. A written agreement with cultural exchange organizations and institutions supported by charity to provide for tuition-free attendance by foreign exchange students and non-resident pupils of charitable institutions.
3. According to an intergovernmental agreement.
4. Whenever any State or federal law or a court order mandates the acceptance of a non-resident student.

Homeless Children

Any homeless child shall be immediately admitted, even if the child or child's parent/guardian is unable to produce records normally required to establish residency. Board policy 6:140, Education of Homeless Children, and its implementing administrative procedure, govern the enrollment of homeless children.

Challenging a Student's Residence Status

If the Superintendent or designee determines that a non-resident student is attending a District school, he or she on behalf of the Board shall notify the person who enrolled the student of the tuition amount that is due and immediately begin proceedings to ban the student from future attendance. The notice shall detail the specific reasons why the Board believes that the student is a nonresident of the District and shall be given by certified mail, return receipt requested. The person who enrolled the student may challenge this

> determination and request a hearing as provided by the School Code,
> 105 ILCS 5/10-20.12b. Adopted January 17, 2017"

46.     In the past 12 months three "Insiders" estimated the current number of non-resident student enrollment violations between 500 and 1,500.

47.     The average estimate was 1,000 violation of 12b residency requirements.

48.     A current Board member wrote a letter stating in part, "If the estimates from other nearby districts that have tightened their residency checks hold true, the number of out-of-district students in DeKalb count run to 10 percent (650 students equals $8.45 million)." This letter was published in a local newspaper and is attached as an exhibit to this Complaint.

49.     Also attached to this Complaint are CUSD 428 records corroborating a) federal funds awarded to CUSD 428 but spent on non-resident students, b) deficit calculations indicating underserved students with lawful enrollment, c) school receipt of property tax revenue showing actual payments by taxpayers for any non-resident student enrollment violations, d) school tax levies which would include excessive levy dollars for any non-resident student enrollment violations, and e) long term debt for facilities which were constructed based on student population growth, including any non-resident enrollment violations. See attachments to the Complaint.

50.     The factual basis supporting the requested relief also includes statements/testimony provided at a public meeting of the CUSD 428 School Board on August 22, 2017 acknowledging non-resident student enrollment violations including the following:

> ENROLLING IN DEKALB SCHOOL TO SEEK REFUGE FROM CHICAGO VIOLENCE
> "I want to talk about the chilling effect ... To drive out undocumented communities from our district, and to drive out students who may seek refuge here from the violence of Chicago. Our enrollment will go down because undocumented immigrants will move out to other districts. Video Recording of CUSD 428 School Board Meeting at (14:12).

DEKALB PROPERTY TAX PAYERS PAYING TUITION FOR NON-RESIDENT STUDENTS

"… We need in this community to take care of our children **regardless of where they come from… we want to respect the fact, that those money people are paying taxes and are going to be with us regardless** of what happens to children…" *Id.* at (16:00) <u>Kate Harmon</u> (spelling?)

ENROLLMENT NEEDS TO BE REVIEWED

"We have had concerns with regards to the numbers of students that are enrolled in schools." (40:45) "That has been a concern over the last several years, that I have heard from the district and other board members. So this is an opportunity for us to take a look at that, and see if it is a concern or not." *Id.* at (40:56). Statement by <u>Victoria Newport (School Board Member).</u>

<u>REALTORS SEE MORE STUDENTS THAN RESIDENCES</u>

"This issue of, where do all these people come from? . . . former school board president made a comment at an open board meeting at one point, that he had talked to some realtors … they couldn't figure out where the people were coming from because there was not a correlating number of . . . units to those people that we had said there's this many people here in the district." *Id.* at (41:26). Statement by <u>Kerry Mellott (School Board Member).</u>

POLICE HAVE SEEN OUT-OF-TOWN DRIVERS DROP OFF STUDENTS AT DEKALB SCHOOL BUS STOPS

"Another issue that has been brought up several times by the chief of police is that his squads see people pulling up in automobiles to bus stops, that they see them frequently. And bus drivers have brought that up as well. People driving up to a bus stop and letting their children out." *Id.* at (42:28). "They are having larger groups of people on bus routes for inexplicable reasons. All of a sudden there is large numbers of kids getting on the bus who are not in that area. It is a cause for concern." Id. at (42:55). Statements by <u>Jeff Hallgren (School Board Member).</u>

<u>BUS DRIVERS IN DEKALB HAVE SEEN MORE UN-SCHEDULED STUDENT RIDERS AT THE BUS STOPS</u>

"In previous years, the board has discussed, … our bus situation, our transportation of students situation, and how we can hopefully not spend quite as much money … our contracted transportation provider work very hard at this and they know how many kids are supposed to show up at a particular bus stop. So when a driver for

First Student finds that there are many more at a particular bus stop
than at another one, then they can begin to correlate things- begin
to know that something's not right." *Id.* at (43:37). Statement by
<u>Kerry Mellot (School Board Member).</u>

51.    During the August 22, 2017 Defendant School Board closed-session meeting a man who

upon information or belief is an administrator in CUSD 428, engaged in the following

conversation: A nonresident woman asked him, "how do I get to keep my kids in the district?", to

which the man answered that she should have her family members put mattresses on the floor of

the apartment. The nonresident woman then responded, "we cannot afford to buy all those

mattresses", to which the man answered, "buy blow up mattresses and have them put on the floor

since that will pass through the investigation."

52.    The man previously observed as being a school administrator introduced himself to the

School Board and stated that he worked at one of CUSD 428's schools.

53.    Also observed after the meeting, were CUSD 428 administrators coaching citizens on how

to get around school residency laws and rules.

54.    In the days following the August 22, 2017 Board meeting, students were observed sitting

on the porches of vacant homes in DeKalb, being picked up in vehicles bearing out of town stickers

in their windows, and some were walking the streets as late as 7:00 p.m. before a driver would

come and pick them up.

55.    During the School Board meeting on September 5, 2017, the same man who was believed

to be a CUSD 428 school administrator stated that he had spoken to "several" families of CUSD

428 students who are nonresidents of the District.

56.    The man believed to be an administrator for CUSD 428, also stated that he felt bad for

these non-resident families and that they should be allowed to stay enrolled in CUSD 428 without

paying tuition. This statement showed evidence of a CUSD 428 insider conspiring with non-resident sponsors to violate Illinois law.

57.    Upon information or belief, at all relevant times Defendant, CUSD 428 maintained the following records:

    a.    Proof of Residency Forms for all new students to the district each year relevant hereto.

    b.    Annual Affirmation of Residency forms for all students from each year relevant hereto.

    c.    Affidavits of Enrollment and Residency parts A, B, and any additional parts for each student and all years relevant hereto.

    d.    Appointment of Short-Term Guardian 735 ILCS 5/11-5.4 for all students and years relevant hereto.

    e.    Records containing all of the information required to be reported for the Illinois State Report Card for the year 2015.

    f.    Reports showing the total number of pupils enrolled in and/or attending CUSD 428 schools from January 1, 2015 to present.

    g.    Notices relating to 105 ILCS 5/10-20.12b and/or CUSD policy 7:60 sent to persons who enrolled a pupil or pupils in CUSD 428 from January 1, 2015 to present.

    h.    Records specifying the amount of tuition charged for each student classification in CUSD 428 from January 1, 2015 to present.

    i.    The absence of any written evidence, testimony, or hearings relating to 105 ILCS 5/10-20.12b and /or CUSD 428 Board policy 7:60 from January 1, 2015 to present.

    j.    The absence of any written reports of hearing findings relating to 105 ILCS 5/10-20.12b and/or CUSD 428 Board policy 7:60 from January 1, 2015 to present.

    k.    The absence of records or written objections to nonresidency hearing findings for hearings relating to 105 ILCS 5/10-20.12b and/or CUSD 428 Board policy 7:60 from January 1, 2015 to present.

    l.    The absence of written decisions, minutes, and/or transcripts of nonresident student hearings, including the absence of video and audio recording or any other documentation of any hearings relating to enforcement of 105 ILCS 5/10-20.12b and/or CUSD 428 Board policy 7:60 from January 1, 2015 to present.

    m.    The absence of tuition reimbursement records and notices issued relative to nonresident pupil matters from January 1, 2015 to present.

    n.    The absence of records or notices refusing to permit a pupil to continue attending the schools of CUSD 428 for failure to pay tuition required under 105 ILCS 5/10-20.12b and/or CUSD 428 Board policy 7:60 from January 1, 2015 to present.

    o.    The absence of records or notices to persons who enrolled nonresident students in alleged violations of 105 ILCS 5/10-20.12b and/or CUSD 428 Board

policy 7:60 requiring said persons to pay the tuition due for the nonresident pupil's attendance at a CUSD 428 school January 1, 2015 to present.

p.    The absence of records or referrals from CUDS 428 to police for investigation of possible violations of 105 ILCS 5/10-20.12b (e) and (f) January 1, 2015 to present.

q.    The absence of signed statements provided to CUSD 428 pursuant to CUSD Board policy 7:60 from January 1, 2015 to present.

r.    The absence of Powers of Attorney submitted to CUSD 428 stating the role and responsibility of any person with whom a pupil is living, related to CUSD Board policy 7:60 or Powers of Attorney related to control over a child regarding daily educational and medical decisions in case of emergency, January 1, 2015 to present.

s.    The absence of notices to persons who enrolled CUSD 428 students challenging a student's residence status pursuant to CUSD Board policy 7:60 from January 1, 2015 to present.

t.    Records showing the sources of funds and the dollar amounts or percentages from each source for all categories of students such as special education and general enrollment January 1, 2015 to present.

u.    Illinois School District/Joint Agreement Annual Financial Report for the Years 2014, 2015, 2016, and 2017.

v.    Documents required to be included or attached to the Illinois School District/Joint Agreement Annual Financial Report for the Years 2014, 2015, 2016, and 2017.

w.    The absence of email correspondence to CUSD 428 administrators concerning residency issues.

x.    The absence of meeting minutes concerning residency issues involving the administration of CUSD 427 and School Board.

y.    Documents and correspondence containing the words "McKinney Vento" and an accounting of all McKinney Vento Act families listed from 2015 to present.

z.    The Title I funds for CUSD 428 and compliance with expenditure requirements and Illinois laws.

58.    On information and belief Northern Illinois University conducted a study showing approximately 600 individuals moving out of Dekalb County from 2010 to 2016.

59.    The Plaintiff was advised by many DeKalb property owners that a large percent of the 600 people who moved out of DeKalb County were motivated to move because the excessively high property taxes lowered the property values and depleted funds needed for property maintenance and repair.

60.     On information and belief, Forbes Magazine listed DeKalb County in the top 1% highest property taxes in the United States. The high property taxes are due in large part to the CUSD 428 practice of enrolling non-resident students in violation of 12b (e) and (f) residency laws.

61.     Based on statements of property owners in DeKalb, many property owners want to sell their property because of the excessively high property taxes, but are unable to do so for that very same reason.

## COUNT I – INJUNCTIVE RELIEF

62.     Injunctive relief pursuant to Federal Rule of Civil Procedure 65 is necessary to prevent the enrollment of non-resident students in CUSD 428 in violation of 105 ILCS 5/10-20.12b (e) and (f).

63.     Plaintiff(s) is requesting that this Court enjoin the enrollment of nonresident students to avoid further violations of 12b.

64.     Irreparable harm will occur if non-resident student enrollment and excessive property taxation continues. Irreparable harm includes a) the inability of enrollment violators to repay tuition owed under 12b, b) DeKalb residents moving out of DeKalb due to excessive property tax, and c) excessive property tax burden on the remaining property owners because there are fewer taxpayers sharing the tax burden.

65.     Remedies at law, such as monetary damages, are inadequate to compensate for the injury.

66.     Considering the balance of the hardships between plaintiff(s) and defendants, a remedy in equity is warranted.

67.     The public interest will be served by the entry of an injunction.

68      The Plaintiff(s) is likely to succeed on the merits

69.     The balance of equities tips in Plaintiff's favor.

70.     Proper notice has been served on the Defendants.

## COUNT II – DECLARATORY RELIEF

71.     Pursuant to Federal Rule of Civil Procedure 57 Declaratory relief is proper and necessary under 28 USC Section 221.

72.     The allegations in this pleading provide the court with authority to declare the rights and other legal relations of interested parties. Plaintiff(s) is seeking to declare that 105 ILCS 5/10-20.12b shall prevail in any conflict with CUSD 428 policy 7:60.

73.     The enrollment of non-resident students in CUSD 428 in violation of 12b (e) and (f) presents an actual controversy.

74.     The court has authority to make binding declarations of rights having the force of final judgments.

75.     The court is authorized to declare the construction of a statute and a declaration of the rights of the parties interested.

## COUNT III – CIVIL RIGHTS VIOLATIONS

76.     Under color of CUSD 428 policy 7:60 the Defendants caused DeKalb property taxpayers and lawfully-enrolled students in CUSD 428 to be subjected to the deprivation of rights guaranteed under the Constitution and laws of the United States of America.

77.     The Defendants shall be liable to the Plaintiff(s) who was/were injured by excessive property taxes and the loss of school services.

78.    Title 1 misspending, and Fourteenth Amendment due process and equal protection violations constitute civil rights deprivations under 42 U.S.C. § 1983.

## COUNT IV – MISAPPROPRIATION OF TITLE I FUNDS

79.    Defendants are in violation of federal law by misspending Title I and other federal funding originally granted to support federally mandated school services for students lawfully enrolled in Illinois School District 428.

80.    CUSD 428 has improperly acquired an excess of federal funds by violating Illinois residency law 105 ILCS 5/10-20.12b, increasing enrollment, and thereby inflating enrollment numbers.

## COUNT V - FOURTEENTH AMENDMENT

81.    This is a Fourteenth Amendment constitutional challenge to the DeKalb School CUSD 428 Title 1 expenditures and property tax levy.

82.    The Fourteenth Amendment violations caused DeKalb property tax payers to pay more than SEVEN MILLION DOLLARS ($7,000,000) for an estimated 1,000 non-resident student enrollment violations.

83.    The enrollment of non-resident in CUSD 428 resulted in approval of excessive tax levy amounts unlawfully adding an estimated SEVEN MILLION DOLLARS ($7,000,000) annually to the tax burden of DeKalb property tax payers.

84.    In addition, due process and equal protection violations occurred with the deprivation of school services to lawfully-enrolled CUSD 428 students.

85.     Lawfully-enrolled CUSD 428 students are deprived of the school services due to diversion of funds and resources used for non-resident students unlawfully enrolled in CUSD 428.

## COUNT VI - CONSTITUTIONAL VIOLATIONS RELATING TO TAXATION

86.     There are Constitutional limitations on property taxation.

87.     Property taxes in CUSD 428 are subject to constraints under three provisions of the United States Constitution; limits on federal direct taxation, equal protection, and the privileges and immunities provisions.

88.     The CUSD 428 levy must grant DeKalb property tax payers equal protection.

   "… Taxes… shall be uniform throughout the United States" Article I, Section 8, Clause 1 United States Constitution

89.     The presence of non-resident enrollment violations in CUSD 428 have resulted in Dekalb taxpayers paying a higher amount of taxes for federally-funded CUSD 428 programs.

90.     Non-resident enrollment violations in CUSD 428 have resulted in an unequal tax burden for DeKalb taxpayers compared to non-DeKalb jurisdictions in which non-resident students reside.

91.     The Apportionment Clause requires that such taxes are: "… in proportion to the Census…" (Clause 4).

92.     The Apportionment Clause is violated by requiring persons who own property in CUSD 428 to pay an estimated $7,500 per student enrolled in violation of the non-resident student laws 12b (e) and (f).

93.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall deny to any person within its jurisdiction "the equal protection of the laws."

94.     In this case the persons paying property taxes on property located in CUSD 428 are being denied equal protection of the laws because they are paying unlawfully-levied additional sums in the form of property tax due to the unlawful enrollment of non-resident students

95.     Equal protection is also violated when lawfully-enrolled students are deprived of school services due to funding limitations caused by expenses relating to unlawfully-enrolled non-resident students.

96.     The Equal Protection Clause applies to state and local governments stating: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws*. Section 1, Fourteenth Amendment.

97.     The Privileges and Immunities Clause of the U.S. Constitution, Article IV, Section 2, Clause 1 prevents a local government jurisdiction from treating citizens of another local government jurisdiction in a discriminatory manner.

98.     In this case non-DeKalb jurisdictions are paying less-than-lawfully-required amounts of property taxes and thereby causing owners of property in CUSD 428 to pay unlawfully excessive amount to provide school services to non-resident students enrolled in violation of 12b (e) and (f).

## COUNT VII – JUDICIAL OVERSIGHT AND ACCOUNTABILITY ORDER

99.     Pursuant to the inherent and equitable authority of the court the Plaintiffs are asking for judicial oversight and a court order to insure CUSD 428 accountability to DeKalb taxpayers and lawfully-enrolled students.

100.    The lawful administration of public funds requires the entry of a federal court order setting forth judicial oversight and accountability for compliance of all CUSD 428 residency affidavits and subsequent enrollment decisions consistent with 105 ILCS 5/10-20.12b.

101.    An order of judicial oversight is needed for all new residency affidavits and related paperwork.

102.    An order appointing a Special Administrator approved by Plaintiffs is needed where the Special Administrator is empowered to immediately investigate legal compliance of the residency affidavits and related paperwork.

103.    A judicial oversight order is necessary to deter and prevent fraud, waste and abuse, and address any mistakes in the enrollment process.

104.    A judicial oversight order is warranted based on the evidence of School insiders covering-up and facilitating the enrollment violations, due to the longstanding nature of the enrollment violations, and due to the excessive harm caused to the property tax base and economic stability of DeKalb.

105.    The judicial oversight order should require weekly reporting and compliance assessments to promptly report the results to taxpayers and lawfully-enrolled students.

106.    Article III of the United States Constitution vests the federal courts with "judicial power" and inherent authority to provide the relief requested herein.

107.   This Judicial Power is self-executing notwithstanding the absence of express legislative authority.

108.   The Vesting Clause of Article III is a self-executing enactment.

109.   The Constitution does the vesting, so no act of Congress is necessary for the court to enter this order for judicial oversight and accountability.

110.   This court has authority to order compliance with audits, investigations, and a review of the expenditure of Title 1 funds for CUSD 428.

111.   An oversight order is required to account for costs of operations, personnel, budget, and finance of CUSD 428 expenditures of Title 1 funds.

112.   Compliance with Title 1, the Due Process Clause, the Equal Protection Clause, and state residency laws should be overseen by a federal judge with the power to issue legally binding court orders.

113.   Meaningful and sustainable reform requires an enforceable consent decree, taxpayer oversight, input from families of lawfully-enrolled students, and an independent monitor selected and supervised by taxpayers and representatives of lawfully-enrolled students.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1.   Enjoin non-resident enrollment violations.

2.   Declare that CUSD 428 must follow the Illinois law in 105 ILCS 5/10-20.12 when CUSD policy 7:60 is in conflict.

3.   Order the appointment of a qualified and independent overseer selected by taxpayers and paid by public funds from the CUSD 428 School budget.

4.  Order CUSD 428 employees and officials to report, in writing, all evidence of non-resident student enrollment violations to state and local police as well as the DeKalb County State's Attorney's Office and the court-appointed overseer. For purposes of meeting this request for relief, anonymous reports by CUSD 428 employees and officials should be permitted.

5.  Order injunctive relief requiring the preservation of all records relating to CUSD 428 student residency from 01/01/2007 to 10/06/2017.

6.  Order meaningful and sustainable reform requiring taxpayer input, requiring input from representatives of lawfully-enrolled students, and requiring an independent overseer to implement reforms in the CUSD 428 prevention of violations and enforcement of state laws relating to non-resident student enrollment violations.

7.  Plaintiff(s) does/do not herein request any monetary damages, payment of legal costs, or expenses incurred by Plaintiff(s) at this time. However, Plaintiff(s) does not/do not waive its rights to amend the complaint to request restitution, reimbursement or refund of excessive tax payments.

Respectfully submitted,

Michael P. Coghlan

Michael P. Coghlan

Michael P. Coghlan, 6185266
Attorney for J. Doe Taxpayer and
Representative of lawfully-enrolled CUSD 428 students
Law Office of Michael P. Coghlan, LLC
444 E. Hillcrest Dr., Ste. 330
DeKalb, IL 60115
Ph. (815) 787-0800
Fax (815) 425-3859
Email: attorney@lompc.com