UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES C. MASON, GREG W. DAVIS ASHBURY COURT APARTMENTS, LLC, COLONIAL EAST, LLC, COLONIAL WEST, LLC, CARDINAL APARTMENTS, LLC, DIETZ PARK, LLC, JAMES COURT, LLC, NORMAL ROAD APARTMENTS, LLC, JLAR, LLC, JLAR ILLINOIS, LLC, UNIVERSITY HEIGHTS, LLC, MASON TOWNHOME SUITES,120 N. ANNIE GLIDDEN, LLC, SOUTH 4TH STREET MEGA LAUNDROMAT, LLC, MASON PROPERTIES DEKALB, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> COMMUNITY UNIT SCHOOL DISTRICT NO. 428; VICTORIA NEWPORT, JEFF HALLGREN, VALERIE PENA-HERNANDEZ, KERRY MELLOT, RICK SMITH, HOWARD SOLOMON, FRED DAVIS, in their individual and official capacities as members of the DeKalb School Board; and UNNAMED HANDLERS, MAILERS, DRIVERS, and INSIDERS, <br><br> Defendants. | Case No. 17 C 50307 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are individuals and businesses that pay local property taxes in DeKalb County, Illinois. In this lawsuit, they allege that Defendant Community Unit School District No. 428 (CUSD 428, a DeKalb public school district), Defendant members of the DeKalb School Board, and unnamed Defendants intentionally allowed students who do not live in DeKalb to attend DeKalb's public schools. Plaintiffs claim that Defendants' conduct violated their constitutional rights to due process and equal protection because it increased their property taxes, a portion of which were "used to pay tuition and other school expenses for" the out-of-district students. (First Am. Compl. [61] ¶ 10.) Plaintiffs assert claims against Defendants under 42 U.S.C. § 1983 for deprivation or

violation of constitutional rights; 42 U.S.C. § 1985 for conspiracy to interfere with civil rights; and 42 U.S.C. § 1986 for failure to prevent violations of § 1985.  Plaintiffs seek damages, including refunds of property tax overpayments from January 2007 to July 31, 2018.  They also request injunctive relief, including an order requiring Defendants to complete a "residency investigation[] of CUSD 428 enrollment and applications . . . according to usual customs and practices."  (*Id.*, Prayer for Relief ¶ 6.)

In July 2018, Plaintiffs filed an amended complaint in response to Defendants' first motion to dismiss.  Two motions are currently pending:  Defendants have moved to dismiss the First Amended Complaint, and Plaintiffs have moved for summary judgment on their claim for equitable relief, specifically, an order directing Defendants to complete the above-referenced residency investigation.  As detailed below, the court grants Defendants' motion to dismiss because (1) the principle of comity counsels against adjudicating Plaintiffs' claims and (2) the Tax Injunction Act, 28 U.S.C. § 1341, divests the court of jurisdiction over Plaintiffs' request for injunctive relief.  Plaintiffs' motion for partial summary judgment is terminated as moot.

## **BACKGROUND**

The court takes the following facts from Plaintiffs' First Amended Complaint, accepting them as true and viewing them in the light most favorable to Plaintiffs.  *See*, *e.g., Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

Plaintiffs owned real estate and paid property taxes in DeKalb during the time relevant to this lawsuit:  January 2007 to July 31, 2018.  (*Id.* ¶¶ 9, 96.)  Plaintiff James Mason "and related entities," for example, "have owned 735 real estate units in DeKalb . . . and pay approximately 1.2 million dollars per year in property taxes."  (*Id.* ¶ 101.)[1]  According to Plaintiffs, "[m]ore than sixty percent (60%) of [their] property tax payments went to DeKalb Schools in the past 10 years."

---

[1] It is unclear whether the "related entities" are plaintiffs in this action.

2

(*Id.* ¶ 19.) As noted, Plaintiffs allege that Defendants "intentionally and deliberately encouraged and facilitated the enrollment of out of district students in knowing violation of" the "Illinois School Code residency and tuition payment requirements." (*Id.* ¶¶ 7, 14.) This conduct, Plaintiffs allege, "forced [them] to pay public school expenses for approximately 1,200 out-of-district" students. (*Id.* ¶ 93; *see also id.* ¶ 10 (alleging that "a portion of [Plaintiffs'] property tax was used to pay tuition and other school expenses for nonresident tuition violators who were lawfully required to pay tuition to the District"); *id.* ¶¶ 21-27 (alleging that DeKalb's public school-related expenditures have increased significantly even as the county's population has decreased).) By Plaintiffs' account, "[a]pproximately 15% of the school funding provided by local property owners was overpaid due [to] Defendants' . . . encouragement and facilitation of nonresident tuition violat[ors] enrolled in DeKalb Schools." (*Id.* ¶ 20.)[2]

"In response to" the filing of this lawsuit, Defendants "hired National Investigations, Inc.," a "specialized school residency investigation firm," to "investigate nonresident tuition violations." (*Id.* ¶¶ 28-29.) Defendants initially commissioned National Investigations to analyze a "20% sample" of students but promised DeKalb property owners that the firm would expand its investigation beyond that sample. (*See id.* ¶ 36.) Plaintiffs allege that Defendants instead "blocked" and "conspired to stop" the investigation, including by "warning tuition violators not to cooperate" and "coaching violators to submit false evidence." (*Id.* ¶¶ 32, 37, 39, 63.) In addition, Plaintiffs allege that Defendants selected the sample in a biased manner and "withh[eld] public records" of the investigation. (*Id.* ¶ 62.) Finally, Plaintiffs allege that Defendants lied about the investigation's findings: Defendants publicly represented the number of residency violations to be 75 percent lower than the number that National Investigations uncovered. (*See, e.g.*, *id.* ¶¶ 32,

---

[2] Plaintiffs further allege that Defendants increased the transportation levy request by 619 percent. (*Id.* ¶ 23.) Although this allegation is not a model of clarity, it appears Plaintiffs contend that Defendants have admitted to raising the transportation levy in order to use the funds generated for non-transportation purposes because taxes earmarked to cover those other purposes had already been raised "to the maximum limits allowed by law." (*Id.*)

3

34, 38; *see also id.* ¶ 90 (alleging that "Defendants publicly made a false report estimating only 300 of 6,500 (4.8%) may be in violation of nonresident tuition laws").)[3] A "[s]eventy-five percent (75%) understatement of violators," Plaintiffs allege, "shows approximately 1,200 out of district tuition violators." (*Id.* ¶ 47.)

According to Plaintiffs, the out-of-district students "cost[] local property owners approximately $7,400 per pupil, or [$8,800,000] . . . per year" for approximately ten years. (*Id.* ¶¶ 48, 96.) Plaintiff Mason, for example, claims he has "paid approximately $100,000 per year" in property taxes "for out of district tuition violators." (*Id.* ¶ 102.) Plaintiffs also allege that they have been "over-charged by the additional cost of teacher salaries and pensions as well as building construction and maintenance costs." (*Id.* ¶ 121.) And they allege that "DeKalb property taxes are in the highest 1% in the nation due in large part due to the Defendants' knowing violations" of Illinois' school residency and tuition payment requirements. (*Id.* ¶ 15.) Relatedly, Plaintiffs blame Defendants for a local economic downturn. (*See, e.g., id.* ¶ 16-18, 115 (alleging that property values in DeKalb have "decrease[d] as a result of excessive property tax increases"; excessive property taxes "have driven businesses and homeowners out of DeKalb"; "[a]s a result of the population decrease . . . there are fewer people to share the property tax burden"; and the drop in property values has jeopardized "the stability of . . . local lending institutions").)

---

[3] In alleging that Defendants blocked the investigation and underreported its findings by 75 percent, Plaintiffs cite to exhibits without providing page numbers and, in most cases, without explaining what the exhibits are. (*See, e.g., id.* ¶¶ 34-36, 42-74.) The court has located some of the cited portions of the record, but it is far from clear that they support these allegations. Plaintiffs' purported smoking-gun evidence of underreporting appears to be the following written statement from National Investigations: "If the district feels that they are getting lied to which is only going to be about one fourth of the families that we investigated and found to be out of district then the Certified Ten Day Letter would go out." (*See id.* ¶ 45 (quoting Ex. 2 to First Am. Compl. [61-2], 4 (describing "DeKalb Current Process" for investigating violations)).) This is an incoherent sentence that does not support the proposition. At best, the record tends to suggest that Defendants, at unspecified times, have knowingly allowed nonresident students to continue attending DeKalb public schools. (*See id.* ¶ 68.) The record also tends to suggest that at some point, Defendants have "believ[ed] paperwork [submitted by students' guardians] over an investigators [sic] physical visit . . . ." (*See id.* ¶ 70.) Nevertheless, the court will assume for purposes of this motion that Plaintiffs' allegations are true.

Plaintiffs allege that at all relevant times, "Defendants, individually and in their official capacit[ies]," were "acting as employees, officials or agents of the DeKalb School District." (*Id.* ¶ 81.) They further allege that "[a]ny action by non-government employees was done at the direction and under the control of state actors." (*Id.*) In Count I of their First Amended Complaint, Plaintiffs assert a claim under 42 U.S.C. § 1983 against all Defendants for violations or deprivations of their constitutional rights. (*Id.* ¶¶ 149-157 (alleging, among other things, that Defendants "subjected [them] to excessive and unlawful public school charges and covered up their conspiracy, in violation of due process and equal protection" under the Fifth and Fourteenth Amendments to the U.S. Constitution).) In Count II, Plaintiffs assert a claim under § 1983 against Defendant CUSD 428 for promulgating, sanctioning, concealing, and exhibiting deliberate indifference to policies that violated Plaintiffs' constitutional rights. (*See id.* ¶¶ 158-66.) The alleged policies "include failing and refusing to impartially investigate, discipline or prosecute employees, parents, mailers, handlers, and others who violate laws including school residency misdemeanors." (*Id.* ¶ 164-65.) In Count III, Plaintiffs assert a claim under 42 U.S.C. § 1985(2) against all "individual Defendants" for conspiring with the purpose of "impeding, hindering, obstructing, and defeating the due course of justice in the State of Illinois, County of DeKalb, and DeKalb School District," with the intent to deprive Plaintiffs of due process and equal protection. (*Id.* ¶¶ 167-71.) In Count IV, Plaintiffs assert a claim under 42 U.S.C. § 1985(3) against all "individual Defendants" for "conspir[ing] for the purpose of" (1) depriving Plaintiffs of "equal protection and immunities under the law"; (2) "preventing and hindering the constituted authorities from giving and securing to Plaintiffs equal protection of the law"; and (3) "preventing and hindering the constituted authorities from giving and securing to Plaintiffs equal protection of the law" and ensuring that Plaintiffs were not "depriv[ed] of liberty and property without due process of law." (*Id.* ¶¶ 172-75.) Finally, in Count V, Plaintiffs assert a claim under 42 U.S.C. § 1986 against all "individual Defendants" for failing to "intervene to prevent the wrongdoing committed against Plaintiffs by Defendants." (*Id.* ¶¶ 176-79.)

Plaintiffs seek approximately $134,094,592 in "general" and "special" damages. (*Id.* ¶ 128; *id.*, Prayer for Relief ¶¶ 1-2.) The damages request includes return of property taxes Plaintiffs paid from 2007 to 2018 as a result of "nonresident tuition violations" and to cover the cost of extra teachers, staff, and school buildings necessary to accommodate out-of-district students. (*See id.* ¶ 128; *see also, e.g., id.* ¶¶ 48, 119, 103-04.) The request also includes nearly $20 million for "loss in property values due to nonresident tuition violators." (*Id.* ¶ 128.)[4] Plaintiffs also seek punitive damages against the "individual Defendant[s]," attorneys' fees, costs, and interest. (*See id.*, Prayer for Relief ¶¶ 3-5, 10, 14-15.) Finally, Plaintiffs request injunctive relief, including an order that Defendant CUSD 428 must "pay for and cooperate with National Investigations . . . to conduct full residency investigations of CUSD 428 enrollment and applications for enrollment from July 24, 2018 through July 24, 2023 according to usual customs and practices." (*Id.*, Prayer for Relief ¶ 6.)[5]

## **DISCUSSION**

Defendants argue that "all of Plaintiffs' claims are local property tax disputes." (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Br.") [81], 12.) Accordingly, Defendants maintain, the court should dismiss the claims based on the principle of comity and for lack of subject matter jurisdiction pursuant to the Tax Injunction Act, 28 U.S.C. § 1341. Defendants also argue that the court should dismiss all claims for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). For the following reasons, the court concludes that the comity doctrine bars all of Plaintiffs' claims and, in addition, that the Tax Injunction Act prohibits the court from exercising subject matter jurisdiction over Plaintiffs' request for injunctive relief.

---

[4] In their briefing, neither party discusses damages for lost property value. The court, therefore, interprets the request as seeking additional property tax refunds or adjustments.

[5] Because this is the only request for injunctive relief that Plaintiffs address in their briefing, the court assumes Plaintiffs have conceded that their other requests for injunctive relief—all of which relate to the residency investigation (*see id.*, Prayer for Relief ¶¶ 7-9, 11-12, 16-18)—rise and fall with this one.

A.   **Legal Standard**

In considering a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the "district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's*, 502 F.3d at 625 (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). "[T]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter exists." *Id.*

B.   **The comity doctrine bars Plaintiffs' claims**

Section 1983 provides a cause of action for individuals who have suffered, by virtue of anyone acting "under color" of the law, a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Congress 'cut a broad swath' when it enacted § 1983, and the statute appears by its terms to give a federal cause of action to state taxpayers." *Cosgriff v. Cnty. of Winnebago*, 876 F.3d 912, 915 (7th Cir. 2017) (quoting *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 103-04 (1981)). The comity doctrine, however, "'counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction'" and "has limited § 1983's scope." *Cosgriff*, 876 F.3d at 915 (quoting *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010)). Comity "is a doctrine of abstention," *Perry v. Coles Cnty.*, 906 F.3d 583, 587 (7th Cir. 2018), and it reflects, among other things, "the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Fair Assessment*, 454 U.S. at 112 (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)). Taxation is one such function. *See Perry*, 906 F.3d at 587 ("Out of respect for state functions, the comity doctrine 'restrains federal courts from entertaining claims for relief that risk disrupting state tax administration.'" (quoting *Levin*, 560 U.S. at 417)); *Capra v. Cook Cnty. Bd. of Review*, 733 F.3d 705, 713 (7th Cir. 2013) ("Like the Tax Injunction Act, th[e] comity doctrine 'serves to minimize the frictions inherent in a

federal system of government' and embodies longstanding 'federal reluctance to interfere with state taxation.'" (quoting *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 725 (7th Cir. 2011) (en banc))).

The comity doctrine thus "bars taxpayers from asserting § 1983 claims against 'the validity of state tax systems' via federal lawsuits." *Perry*, 906 F.3d at 587 (quoting *Fair Assessment*, 454 U.S. at 116); *see id.* at 586 (affirming dismissal "based on comity concerns" of § 1983 claims that concerned state tax practices and sought monetary damages, declaratory relief, and injunctive relief). "Taxpayers alleging that their federal rights have been violated by state or local tax practices must seek relief through available state remedies if those remedies are 'plain, adequate, and complete.'" *Cosgriff*, 876 F.3d at 915 (quoting *Fair Assessment*, 454 U.S. at 116); *see also Perry*, 906 F.3d at 588; *Capra*, 733 F.3d at 713. In applying the "adequate, plain, and complete" standard, the Seventh Circuit "ha[s] used the comparable standard from the Tax Injunction Act, which bars federal courts from enjoining state taxes where a 'plain, speedy and efficient' state remedy is available." *Capra*, 733 F.3d at 714 (quoting 28 U.S.C. § 1341). To determine whether a state remedy is adequate, "the question is whether the remedy is procedurally sufficient, not whether it will 'result in the taxpayer's desired outcome.'" *Perry*, 906 F.3d at 588 (quoting *Capra*, 733 F.3d at 714). State remedies are adequate if they afford to the taxpayer a "full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Cosgriff*, 876 F.3d at 916 (quoting *Capra*, 733 F.3d at 714); *see also Perry*, 906 F.3d at 588 (same).

In Illinois, aggrieved taxpayers can file complaints concerning property tax assessments with a county board of review. *Perry*, 906 F.3d at 588. If the taxpayers are "dissatisfied with a decision of a county [b]oard of [r]eview," Illinois law affords them "two options for appeal." *Capra*, 733 F.3d at 714; *see also Perry*, 906 F.3d at 588. Specifically, taxpayers

> can either appeal to the Property Tax Appeal Board (PTAB), 35 Ill. Comp. Stat. § 200/16–160, or file a tax objection complaint directly with a county circuit court, § 200/23–15. . . . If they select the PTAB route, they can appeal the PTAB's

> decision directly to Illinois state courts. 35 Ill. Comp. Stat. § 200/16–195. Although the PTAB is not expressly authorized to consider claims beyond objections to assessment values, we have found no provision in its authorizing statute or regulations precluding it from doing so. And before the PTAB, taxpayers may supplement the record with evidence beyond what was before the Board of Review. § 200/16–180. . . .
>
> Thus, through either the PTAB or the circuit courts, any statutory or constitutional claims can be heard by a state court of general jurisdiction and can be appealed through the Illinois court system to the Illinois Supreme Court and the Supreme Court of the United States.

*Capra*, 733 F.3d at 714-15 (citations and footnote omitted). In *Capra*, plaintiffs asserted, among other things, Section 1983 claims for damages against the Cook County Board of Review after the Board reversed reductions of plaintiffs' property tax assessments. *See id.* at 707. The court concluded that because plaintiffs' claims "challenge[d] the application of a local tax . . . on federal constitutional grounds," and because "the available state remedies were plain, adequate, and complete," the district court properly abstained from reaching the merits. *Id.* at 714, 717; *see also Heyde*, 633 F.3d at 520 ("Taxpayers must first exhaust the state remedies, and only after may they seek review of the state court decision in the United States Supreme Court."). The Seventh Circuit has repeatedly concluded that Illinois' procedures for dissatisfied taxpayers are "adequate under *Fair Assessment*." *Perry*, 906 F.3d at 588; *see also, e.g.*, *Capra*, 733 F.3d at 715; *Cosgriff*, 876 F.3d at 916; *Heyde*, 633 F.3d at 520 (collecting cases).

As noted, Defendants argue that Plaintiffs' claims "boil down to assertions that excessive or inflated taxes deprived or violated their constitutional rights of due process and equal protection of the laws." (Defs.' Br. 13.) Defendants further argue that Illinois law provides "plain, adequate, and complete" remedies for Plaintiffs' claims, and emphasize that Plaintiffs nowhere allege these remedies are inadequate. (*See id.* at 8-12.) Accordingly, Defendants maintain, the comity doctrine requires the court to dismiss all of Plaintiffs' claims. (*See, e.g.*, *id.* at 6-14.)

Plaintiffs respond that they "do[] not allege a property tax cause of action." (Plaintiffs' Opp. to Mot. to Dismiss ("Pls.' Opp.") [88], 4.) Rather, they maintain that they "allege[] the opposite of a property tax" because they allege that Defendants used property taxes as a mere "guise" to

9

deprive them of constitutional rights. (*Id.* (quoting First Am. Compl. ¶ 6).) This argument has no traction. The cited portion of the First Amended Complaint is plainly an allegation by local taxpayers "that their federal rights have been violated by . . . local tax practices." *Cosgriff*, 876 F.3d at 915; *see* First Am. Compl. ¶ 6 ("DeKalb School district property tax payers are being deprived of a fair hearing and notice prior to takings of private funds under the guise of a property tax.").) In other words, by Plaintiffs' own admission, property taxes are the "takings" to which Plaintiffs object. (*See* First Am. Compl. ¶ 6.) Plaintiffs allege that the taxes were too high because they effectively charged for out-of-district students' education, and claim that being forced to overpay taxes deprived them of due process and equal protection. (*See, e.g.*, *id.* ¶ 93 ("DeKalb taxpayers were deprived of due process and equal protection as they were . . . being forced to pay public school expenses for approximately 1,200 out-of-district residency violators.").) Moreover, Plaintiffs seek to recover the alleged tax overpayments as damages. (*See, e.g.*, *id.* ¶¶ 104, 119, 128.) The only fair reading of these allegations is that Plaintiffs are asserting civil rights claims against the validity of a local tax system through a federal lawsuit. *See Perry*, 906 F.3d at 587; *see also Cosgriff*, 872 F.3d at 916 (rejecting plaintiffs' "attempt to remove their claims from the purview of comity considerations by arguing that they are not concerned about the tax that was imposed on them, but they are instead concerned about the defendants' unconstitutional actions against them").

Seeking to avoid this conclusion, Plaintiffs also point to allegations that Defendants caused the alleged constitutional deprivations by failing "to comply with the Illinois School Code residency and tuition payment requirements." (Pls.' Opp. 4 (quoting First Am. Compl. ¶ 7).) Plaintiffs then argue that "[s]chool residency and tuition are not tax matters." (Pls.' Opp. 4.) But Plaintiffs are not asserting claims against Defendants for violations of school residency and tuition requirements. Rather, as already discussed, Plaintiffs are alleging that *as a result of* such violations, their property taxes were higher than they should have been. This allegation challenges local tax practices and threatens to "disrupt[] state tax administration." *Perry*, 906 F.3d

at 587 (quoting *Levin*, 560 U.S. at 417). Relatedly, Plaintiffs contend that their request for injunctive relief is not "a property tax cause of action" because a school residency investigation does not "challeng[e] an assessment, levy, or collection of property taxes." (*See* Pls.' Opp. 4-5.)[6] This argument, too, lacks merit. Plaintiffs seek an injunction only as relief for their civil rights claims, which do challenge the validity of a local tax system. And Plaintiffs' allegations demonstrate that they intend to use the results of the desired investigation to recover property tax payments and/or reduce their future property tax liability. Indeed, Plaintiffs even allege that "[l]ower property taxes generally result from honest residency investigations because in district (DeKalb) taxpayers no longer have to pay for the public education of out of district (e.g. Aurora) residents." (First Am. Compl. ¶ 76.)

Because Plaintiffs are asserting civil rights claims against the validity of a local tax system, they "must seek relief through available state remedies if those remedies are 'plain, adequate, and complete.'" *Cosgriff*, 876 F.3d at 915. Plaintiffs do not allege that they have exhausted or attempted to exhaust state remedies.[7] They do, however, appear to argue that state remedies are not "plain, adequate, and complete" because the Illinois Property Tax Code does not provide mechanisms for "investigat[ing], challeng[ing], and recover[ing] tuition from out-of-district tuition violators." (Pls.' Opp. 6; *see also id.* at 8.) Plaintiffs also contend that even if the Illinois Property Tax Code provided such mechanisms, Defendants "obstructed Plaintiffs' opportunity" to utilize them. (*Id.* at 6; *see also id.* at 8.) Similarly, Plaintiffs contend that the Illinois School Code does not allow them to "remove tuition violators and collect tuition due," and that even if it did, Defendants prevented Plaintiffs from proceeding under the School code by "with[olding] the

---

[6] Plaintiffs expressly advance this argument in urging that the Tax Injunction Act does not bar the request. (*See* Pls.' Opp. 5.) The court explains why this argument fails in Section C, below. Here, for the sake of completeness, the court discusses why the argument does not hold water for comity purposes.

[7] Even if they had, the only federal court to which Plaintiffs could appeal is the U.S. Supreme Court. *See Capra*, 733 F.3d at 714-15; *Heyde*, 633 F.3d at 520.

11

necessary evidence." (*Id.* at 6; *see also id.* at 8.)

Plaintiffs' arguments that they lack adequate state remedies are unpersuasive. As already discussed, Plaintiffs are not asserting claims against Defendants for violations of residency and tuition requirements. Rather, they are claiming that Defendants violated their constitutional rights by "fail[ing] to comply" with such requirements, thereby causing Plaintiffs to pay excessive property taxes. (*See, e.g.*, First Am. Compl. ¶¶ 6-7, 16, 93.) The question whether Plaintiffs can challenge violations of residency and tuition requirements through the Illinois Property Tax Code or the Illinois School Code is therefore immaterial. What matters is whether Illinois law provides "plain, adequate, and complete" remedies for taxpayers like Plaintiffs. *Fair Assessment*, 454 U.S. at 116. As the Seventh Circuit has repeatedly held, it does. *See, e.g.*, *Perry*, 906 F.3d at 588; *Scott Air Force Base Props., LLC v. Cnty. of St. Clair*, 548 F.3d 516, 523 (7th Cir. 2008) ("Illinois case law clearly indicates that Illinois taxpayers are able to litigate their constitutional and other federal-law challenges to state tax matters in the Illinois administrative and judicial system.").

Because there are "plain, adequate, and complete" state remedies for Plaintiffs' § 1983 claims, the principle of comity bars Plaintiffs from bringing them in this court. *Fair Assessment*, 454 U.S. at 116. And for Plaintiffs to prevail on their § 1985 claims, the court would need to decide whether the challenged features of DeKalb's property tax system violate the U.S. Constitution. "Such an inquiry would have the same disruptive effect on state tax systems that prompted the Court's decision in [*Fair Assessment*] to preclude federal courts from hearing 1983 claims challenging the validity of state tax systems." *See Lawyer v. Hilton Head Public Serv. Dist. No. 1*, 220 F.3d 298, 303-04 (4th Cir. 2000). The principle of comity, therefore, bars Plaintiffs from bringing their § 1985 claims in this court, as well. *See id.* (holding that the Tax Injunction Act and the principle of comity barred not only plaintiffs' § 1983 claims, but also its "claims under § 1985 and the Takings Clause"); *see also, e.g., Gibson v. Gains*, No. 05-15997, 2006 WL 858336, at *3 (11th Cir. Apr. 4, 2006) (unpublished) (affirming district court's conclusion that the principle of comity precluded it from entertaining plaintiff's claim for damages under § 1985 "because the

claim depend[ed] on an initial determination of the constitutionality of the state tax system"); *Terminello v. Vill. of Piermont*, No. 08-CV-01056(WCC)(DCP), 2009 WL 3496615, at *1-2 (S.D.N.Y. Oct. 28, 2009) (determining that the Tax Injunction Act and the principle of comity precluded the court from hearing plaintiffs' §§ 1983 and 1985 claims). Finally, dismissal of Plaintiffs' § 1986 claim is required because "§ 1986 liability is derivative of § 1985 liability." *Smith v. Bashore*, No. 99-3645, 210 F.3d 376, 2000 WL 359847, at *1 (7th Cir. Apr. 6, 2000) (unpublished); *see also, e.g.*, *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985) (same).

**C.     This court lacks subject matter jurisdiction under the Tax Injunction Act**

Where "dismissal [is] appropriate based on the comity doctrine," it is "unnecessary to address the applicability of the Tax Injunction Act." *Perry*, 906 F.3d at 586; *see also Levin*, 560 U.S. at 417, 432 (stating that the comity doctrine is "[m]ore embracive than the TIA" and, having "conclude[d] that the comity doctrine justifie[d] dismissal of respondents' federal-court action," declining to "decide whether the TIA would itself block the suit"); *Fair Assessment*, 454 U.S. at 107 (similar). Nonetheless, for the sake of completeness, the court notes that even if the principle of comity did not bar Plaintiffs' claims, the Tax Injunction Act (TIA) would strip the court of jurisdiction over Plaintiffs' request for injunctive relief.

"Federal courts are courts of limited jurisdiction," *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 845 (7th Cir. 2015), and the TIA imposes one of many jurisdictional limitations. Specifically, it provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.'" 28 U.S.C. § 1341. "The TIA divests the district courts of subject matter jurisdiction in 'cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes.'" *Scott Air Force Base*, 548 F.3d at 520 (quoting *Hibbs v. Winn*, 542 U.S. 88, 107 (2004)). The Act "strips the district courts of the power to hear suits seeking not only injunctive but also declaratory relief from state taxes." *Scott Air Force Base*, 548

F.3d at 520. It "applies to *any* state tax, including municipal and local taxes." *Id.* Moreover, it applies "even when the claim challenges the constitutionality of the tax." *Kathrein v. City of Evanston*, 636 F.3d 906, 911 (7th Cir. 2011) (citing *Scott Air Force Base*, 548 F.3d at 520). As stated above, "the TIA's jurisdictional bar is conditioned upon the availability of a 'plain, speedy and efficient remedy' in state court. *Scott Air Force Base*, 548 F.3d at 521 (quoting *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982)).

Plaintiffs argue that the TIA does not deprive the court of jurisdiction over their request for injunctive relief because, according to Plaintiffs, "[i]nvestigating residency" would not "enjoin, suspend or restrain the assessment, levy or collection" of a local tax. (Pls.' Opp. 5; 28 U.S.C. § 1341.) In support of this argument, Plaintiffs cite *Direct Marketing Association v. Brohl*, 135 S. Ct. 1124 (2015). There, the Supreme Court held that "notice and reporting obligations" for retailers that do not collect sales and use taxes on certain purchases did not "'restrain' the 'assessment, levy or collection' of a state tax . . . ." 135 S. Ct. at 1128, 1133 (quoting 28 U.S.C. § 1341). The Court reasoned that the obligations constituted "information gathering," which occurs "before assessment, levy, or collection," and that "a suit cannot be understood to 'restrain' the 'assessment, levy or collection' of a state tax if it merely inhibits those activities." *Id.* at 1129, 1133 (quoting 28 U.S.C. § 1341). Plaintiffs' analogy to *Brohl* is inapt. A residency investigation, standing alone, might fairly be characterized as "information gathering" that has no effect on assessing, levying, or collecting state taxes. But as the court has already concluded, Plaintiffs want Defendants to complete the investigation so that they can use the results to recover taxes already paid and reduce future taxes. Plaintiffs, therefore, are seeking a "federal-court order[]" that would help them "to avoid paying [local] taxes." *Scott Air Force Base*, 548 F.3d at 520. And for reasons discussed in connection with the comity doctrine, Illinois law provides Plaintiffs with "plain, speedy and efficient" remedies for their claims. *See Fair Assessment*, 454 U.S. at 116 n.8 ("We discern no significant difference, for purposes of the principles recognized in this case, between remedies which are 'plain, adequate, and complete,' as that phrase has

been used in articulating the doctrine of equitable restraint, and those which are 'plain, speedy and efficient,' within the meaning of § 1341."). Accordingly, the Tax Injunction Act divests this court of jurisdiction over Plaintiffs' request for injunctive relief.[8]

## **CONCLUSION**

For the foregoing reasons, the court grants Defendants' motion to dismiss Plaintiffs' First Amended Complaint [76] and terminates as moot Plaintiffs' motion for partial summary judgment [89].

ENTER:

Dated: September 5, 2019

_____
REBECCA R. PALLMEYER
United States District Judge

---

[8] Because the court is dismissing Plaintiffs' claims based on the principle of comity—and has further noted that it lacks subject matter jurisdiction over Plaintiffs' request for injunctive relief pursuant to the TIA—the court need not address Defendants' arguments that Plaintiffs fail to state a claim under Rule 12(b)(6). Defendants' argument that Plaintiffs have failed to plead the requisite elements of their claims, however, appears to have merit.